Good morning. May it please the Court. My name is Peter Wolf. I represent Mr. Inouye in this appeal. This is what one might call sort of a fact-based appeal. It has to do with the restitution schedule set by the District Court. And the problem, as we see it, is that the District Court, in making what it called projections of Mr. Inouye's earnings that should have been, and maybe were, based on the record before it, made projections that made no sense in terms of what that record actually showed. Counsel, I'm curious, though, how that is prejudicial to your client in that the ultimate restitution, as I understand it, is a percentage of income. So if your client earns nothing, he pays nothing. If he earns $10,000, he pays a percentage. $100,000, he pays a percentage. So where's the prejudice? So the problem comes between $0,000 and $100,000, or to take a more realistic approach, between $0,000 and several thousand on a monthly basis. And the reason is that if you take a percentage of the gross income based on a projection, it might make sense if Mr. Inouye was making $3,000, $4,000, $5,000 a month. It makes a lot less sense if he's making $800 a month or $1,000 a month. And the other problem is it kind of reads out of the restitution statute the authority for the District Court to impose nominal payments in the appropriate case. And so at the point where Mr. Inouye is making no money, then there's no difference between a percentage of nothing and a nominal payment. Maybe even the percentage is more advantageous in the sense that 8% of $0 is still $0, whereas a nominal payment of $10 or $5 while he's unemployed actually imposes a greater obligation. But the problem is once you get beyond that point and a person has, as Mr. Inouye had, a lot of problems, medical expenses, tax debts, obligations of child support, and so forth, that setting a percentage may be an impermissible or improper burden given the circumstances. And my view is that... So is that, just to complete that thought, your argument then is if he's only making, sorry if that's very loud, if he's only making a little bit of money, it might have been error to do anything other than to order any restitution? Is that what you're essentially arguing? No. First of all, the amount of restitution in total, or the fact of... Right, right. Those aren't inconsistent. Yes, yes. I appreciate that. But I'm really struggling to understand what difference this makes to your client. On the one hand, it seemed to me that you might be impliedly arguing that the problem was that an arrearage was going to be ticking away each month when he really didn't have income, such that at the end of the supervised release period, maybe he was worried that that would be extended. But now I'm hearing you make a really different argument this morning, so you've lost me. So the argument is that in setting the schedule of payments, which is the district court's duty and can't be delegated, the court needs to act on the facts that are presented to it at the time it's making that determination. I thought that the judge went through the facts really quite clearly. I mean, it seems that the judge knew exactly what the situation was with your client and went through all those facts. You've argued this at a very, very high level of generality, and in a particular case, it seems to me that there might be some merit to what you've said. But given how carefully this judge looked at these facts, what's the problem here? Well, except that the facts were this. At the time that the court was holding the hearing, Mr. Inouye had a felony conviction. That's not conducive to employment, but... Right, but that would be true in every case. Right, so we can dispense with that. He had no job. His cash flow in July, this hearing... But he also took into account that he had been employed in the past, that he was very well presented, and notwithstanding the fact that he had a felony conviction, it was very likely that he would be able to find some kind of employment in the future. He took into account that he had charge of his kids, and now his kids were back with his wife, that he had a responsibility for an apartment, including internet and other things, but now he was living with his aunt. He took into account all of these things. Where's the error in what the district court did? Because there's no basis on which one could say that one should pay 8% of one's income, when at the moment the court's making that decision, he doesn't have any income. Is your argument, counsel, that imposing a percentage is always wrong? No, imposing a percentage is always wrong when at the moment you're doing it, your data set is the person has no job, is living on the charity of others, but don't know what the expenses are. The court is almost always going to have to make some kind of predictive judgment. Even if he'd been fully employed and had been handsomely compensated, she would have to have made a finding that he was likely to continue to be handsomely compensated and to keep the job in which he's presently employed. That would be true in every case. But it's not that hard to change it. That's the point. Well, if that's true, then it seems like another reason why there's no prejudice here, because let's say there had been a $10 payment and then he became employed, we'd be back exactly where we are now. No, I don't think we would be here at all if that was the case. What would have happened is that... But I guess my point is, or my question to you is, since it can be redone, then presumably it would be redone as soon as he has income, and in that event we'd have the same order in front of us, just at a different point in time. Well, that's true, but I think there's some virtue in having the district court do it right the first time, which would... And since it can be changed either by agreement of the defendant, because you can file a 12C modification of supervised release if the defendant agrees at any time, and if the defendant doesn't agree, the matter can be presented to the district court by the probation officer, and a hearing possibly taking as long as 5 to 10 minutes would resolve the matter. So between now and the time your client gets a job, let's say that happens, and there's a hearing to change the rate at which he's going to pay this restitution, which is what the judge contemplated, that that hearing would happen, between now and then, how is your client prejudiced? He's ordered to pay 8% of no income, right? Well, I think that there exists a problem when the district courts follow the wrong rule in imposing a restitution. But I just want to give you one more chance, because I am missing it. How is he prejudiced between now and then, sir? Is he? Well, if you consider prejudice just the question of payment of money, then maybe the answer is none, but if you... I don't know. I don't understand that answer, and this is a sincere question. I'm worried that I'm missing something at the end of the supervised release period or something. Is he accruing an arrearage in this meantime that is going to prejudice him later? No, I don't think that's an issue. All right, so let's say in six months he gets a job. That's an arbitrary sort of hypothetical, and he comes in to have it adjusted, because now we know what his actual income is going to be, and they peg it at that. Is your argument that there's a problem then, because 8% is an incorrect percentage? The problem is we don't know whether 8% is right or wrong, because we don't know what his actual income is going to be, and more importantly, we don't know what his actual expenses are going to be, and the statute itself requires the court to take into account the defendant's obligations to support his dependents and so forth. What should the district court have done? What should she have imposed? I think the district court should have imposed nominal payments of... So you would have been right back up here saying he can't possibly pay this because he's only making $100 a week. I wouldn't have been saying it if I was the one asking for it, Your Honor, so I don't think that's a problem. But it is a fair question, counsel, and it goes back to prejudice, and I think we're all really struggling with how is your client prejudiced by this. Well, the defendant should be ordered in this case to have made nominal payments until he became employed, at which point either he and his probation officer should have agreed as to some amount of restitution, or if they were unable to agree, the district court should have been prepared to take it up at that point in time, knowing what his actual income was and what his actual expenses were. Except the statute requires the court to project, doesn't it? It requires the court to determine projected earnings. Right. So what's the point of doing that if it's in the context of pretending that we're not going to decide anything until we know all the facts? It seems to me that it anticipates some level of educated estimate. Well, but there's two points at which restitution can come up. And one is at the time of sentencing when it has to come up, and generally the person is being sentenced to some term of incarceration, so the court knows, okay, this guy's going to prison for some amount of time, so we have to make some projection of his earnings and set a schedule now because he can't delegate it to the Bureau of Prisons and he can't delegate it to probation. But when it comes up in this context, in a supervised release violation, the court knows a lot more about what actually happened to the defendant. And when you know the defendant in front of you is unemployed, is living on charity of his relatives, and has legally obligated expenses for dependent care and so forth, and he's unable to meet, to just say based on that, okay, well, 8 percent, and don't worry, by the way, because 8 percent of nothing is still nothing. It doesn't deal with the problem of what happens when he gets employment, unless he instantaneously gets employment where it was obvious that 8 percent would be okay. Because it doesn't take into account his actual expenses and his legal obligations to meet those, which are also part of the judgment and the order of supervision, which requires the defendant to pay towards the care of his dependent children. Counsel, you've exceeded your time, but we used a lot of it with questions, so you may have two minutes for rebuttal.  May it please the court, I'm Ronald Johnson. I'm here on behalf of the United States of America. With respect to this case, Your Honor, we believe that the court has kind of crystallized the issue. There appeared to be a distinct disconnect between what the judge was trying to do, and that was project forward conditions that the defendant needed to abide by, his supervised release, and his circumstance at that particular moment. The judge took into consideration that previously, because this was a revocation proceeding, previously he was ordered to pay 10 percent of his income. After this proceeding, taking into account the circumstances that Mr. Wolf brought to the court's attention, the court did a detailed analysis, and Judge Mulway did an excellent job in a 26-page order. Counsel, this is not the position that your office took earlier. That's correct, Your Honor. Are you going to speak to the... I will. It's a 180, you're doing a 180. Absolutely. Okay. If I could finish this point in transition, the judge was absolutely correct in issuing an order for 8 percent, which was a reduction, and not requiring payment until he was employed. The position that was taken below was taken by the assistant, the trial attorney in the case, and it was during a process through which the court, Mr. Wolf, that attorney, and our office was looking at the restitution provisions and how they applied to individual revocation cases and sentencings in the district court. I believe that that attorney became confused and did not fully appreciate the 3664 F2 provisions, specifically the projection. In the record, she repeatedly brings back the point that the person is indigent. I don't see how you can project. But the judge in this case made the ruling. In any sentencing, and this is my explanation, in any sentencing, if we were before the district court and we recommended, as the assistant did in this case, 30 days incarceration at some point, the assistant says, we recommend 30 days. The judge didn't give the defendant 30 days incarceration. The judge gave him one day. And as a matter of fact, he didn't even serve a day. Judge Mulway was very considerate of the circumstances, let him report to the marshals, consider it a day, and then go to try to earn a living and make restitution payments. Now, could Mr. Wolf have appealed that? Could we have appealed that? We asked for 30 days. Could we have said that we disagreed with a court sentence, objected at that point, and taken a position? Usually, we don't. Usually, we come in and we end up, regardless of whether a sentence is harsher or more lenient, we support the district court. At the point in time that the judge made the ruling, we made our position known, and the assistant said she believed that he was absolutely indigent and incapable, and she harped on the fact that there was a negative cash flow. She wasn't looking at the projection. When we come to this level, the sentence imposed by Judge Mulway with respect to defendant's restitution payment schedule is now before this court, and the standard of review applied is abuse of discretion. Under that standard, our office and the department can't say that the judge is wrong. We're here because we believe we need to support the judge's decision, despite the fact that our assistant at the trial court level objected to the imposition of the 8% because she believed that the defendant was not going to be capable of paying it. Yes, we did change our position, but we believe at this point that we're in a different procedural posture. We're before the court. The question for the court here is whether the court abused its discretion in issuing the restitution payment schedule. Is there any way that the defendant is prejudiced by having a number established there for his income, a projected number that doesn't comport with reality? Your Honor, I looked at the one case cited by the court and the case that we also cited, the Booth case. The Booth case was a wire fraud case, and the defendant, or two defendants in that case, there was approximately $2 million in fraudulent proceeds that they got. They returned, according to the facts in the opinion, approximately $5,000. The court in that case, the district court, ordered $500 restitution per month. It didn't distinguish and say, we're going to do it on a percentage basis. It said, we're looking at your obligations, we're looking at your earning potential, and we think you can pay this. And this court reviewed that and said it was not an abuse of discretion. So we do believe that there are going to be circumstances where a set number can be upheld on appeal, and where a percentage can be upheld. The benefit of the percentage... Forgive me for interrupting, but my question went to prejudice. So if there's this number that's been imposed and he doesn't get a job, let's say, and there's an arrearage accruing, the only thing I can think of is that it's possible, I suppose, that someone could, if there was such an allegation, and if there was a finding that he wasn't making good faith effort to make the payment, that potentially the period of supervised release could be extended, or something on the back end could come back. But if that's the case, I'm not sure how that would be ripe at this point. I just can't think of another way this prejudice is defended. Your Honor, if the defendant's before the court asking that nominal payments be made, interest will accrue on the outstanding balance at some point. And so that's going to occur, and the defendant will have to pay that money. If the defendant pays a percentage now, interest is going to accrue, and the judgment remains the same. I don't see how the defendant is prejudiced in terms of monetary contributions towards restitution. I appreciate that interest is accruing on an unpaid balance, but it's all sort of a fiction, if you're right that he doesn't have the income and there isn't a finding of lack of good faith in paying what it is he owes. So it doesn't appear as if he will suffer any prejudice, because when he's unable to pay, and he's without employment, he pays zero. When he is employed at such time that he is gainfully employed, he will pay 8% of his gross income. And if his expenses have increased significantly at that time, I assume he can move for an alteration of the schedule. Judge Mulway, several times in wrestling with this, went through that process, and at multiple hearings was very concerned about that issue. And she said, in several different places, that you need to keep in close contact with your probation officer. You tell your probation officer if you're having difficulty, we can come in on a modification by consent, or we can have a hearing on the matter. And that would be 18 U.S.C. 3664-K. That provision should be read in conjunction with 3664-F2, which is the projection. So the judge projects, makes a best estimate of where they will be, and then probation through the constant monitoring has the ability to come back to the court, or any of the parties can bring the matter back to the court, for a revision of the payment schedule, if that payment schedule is too onerous on the defendant. I would just like to note that the court, in this particular case, went through, again, a comprehensive analysis of the factors. And the district court utilized the correct legal rule or standard in reaching her restitution order, and that she applied it in a way that was logical, plausible, and supported by the inferences in the record. And under Hinkson, then, there is no abuse of discretion, and we believe you should affirm the court's order. And we recognize that we did take a different position below. However, this court can entertain our position at this point, contrary to what counsel has argued in terms of waiver and estoppel, because we didn't prevail on our argument below. Under Armstrong, the defendant has suffered no prejudice. And when the issue presented is purely one of law, and either does not depend on factual record developed below, or the pertinent record has been fully developed, which we believe it has been here, the court can entertain the argument and affirm the judge's order. Thank you, counsel. We'll hear from Victor Stone. Good morning, Your Honors. I'm Victor Stone, and I represent Maryland Crime Victims Resource Center, which, at the invitation of the court, filed an amicus brief here, invitation of the district court, and the court has granted our motion to allow some oral argument. In looking at, as a substantive matter, the brief filed by the United States in this court, the amicus agrees completely with that brief and has almost no disagreements with the substance. Procedurally, however, the amicus, which represents victims nationwide who experience trauma every time they're dragged back into court to see that their case has not ended and their anxiety over it and their loss has not been handled, frankly, they're not particularly happy about the procedure, the procedural posture of this case, because they think there's no jurisdiction. They think this case amounts to the defendant getting two bites at the apple. When the defendant in 2010 negotiated his plea bargain, he specifically waived any objection to the sentence or the manner in which it was imposed, and he got quite a bit for it. At that very time, as the defendant's current brief points out, his opening brief and his reply brief, he already had negative income stream. The defendant makes a point of that. It seems to me that the defendant's M.O. is that he operates with a negative income stream, and that's clear when you look at the record that was developed here at the hearing. He owes $18,000 to the Internal Revenue Service, but he hasn't paid it. He owes $5,000 in medical bills, but he's not paying it. He listed no expenses for child support. His children are living with his ex-wife, and apparently there's no child support order involved. He owes $900 on his telephone. It seems like the only creditor who actually took action was his landlord who evicted him. Everybody else is left holding the bag, but he's always operated with a negative income stream, yet he did not decide to appeal that at his original sentencing. Now, the United States and... Counselor, are you arguing that there's been an appeal waiver here? Well, I think that his waiver... This is not here on direct appeal, is it? This case is not here on direct appeal, and it is not like the Booth case procedurally, which both of the parties rely on. The Booth case was a direct appeal. There was no plea bargain, and I totally agree that if the defendant wanted at the time of sentencing to complain about a percentage of his earnings being imposed to pay restitution, he could have done it at that time, just as in Booth. He chose to accept a percentage of his earnings at that time, and now the way he wants to bring it up and get a second bite at the apple is he doesn't pay and he lies to the probation officer. Well, when the probation officer filed two charges on this probation violation, the first charge was that he hadn't paid the percentage. The second was that he lied to the probation officer. The defendant pled guilty to the second charge. There was no action on the first charge. The judge imposed one day of incarceration only on the violation of lying to the probation officer. Percentage of restitution was not a basis for that violation. So how come the court reached it? Well, defense counsel brought it up. All the parties were there. And the only way it's legitimately brought up is as an 18 U.S.C. 3664-K modification. And there was all these arguments made about why it should be modified, and actually the judge did. The judge gave a reduction. Well, first of all, a reduction is not adverse. It's not a reduction. Well, it can be if you're asking for 2% and it's 10 and you get 9. I don't know why that wouldn't be considered adverse. I'm sorry, why it wouldn't be considered what? Why it can't be adverse if it is a reduction but not as much as you think you are entitled to. Why that doesn't count as adverse. Well, even assuming that the court views the fact that any percentage was imposed, since we heard here that's the argument that's being made. No percentage should have been imposed at this time. The position that the defense counsel is taking now, we summed up in the last sentence of our brief, is called put it off. Let's put this off. Well, that is not the position they took at the original sentencing. Is it your position that an order upon a modification is not appealable or that specifically in this case it's not appealable for some reason? Well, I think it's both, Your Honor. I think generally, I think the court has to be aware that we could find no case, and the parties have cited no case, where 3664K modification is appealable. And in this case, as this defendant has changed jobs over time, and he's changed a lot of times, there could already have been four or five 3664K hearings. And if that were to be appealable, and there's no statute that makes it appealable, it would come up to this court five, six times in the same case. How does it become appealable? A defendant says, I'm going to take an action that's going to result in contempt. He doesn't pay. Judge holds him in contempt and punishes him. And then the punishment, the contempt punishment, makes it appealable. But this court hasn't done that. This district court forgave various times when he didn't pay, lowered it, specifically said, while you have no job, the percentage you're going to be paying is zero, set it in the record so it was clear that the court was not punishing him at this time, but that the court was recognizing that victims have a right to know that there's going to be some progress. And that's because the Crime Victims Rights Act, which is 18 U.S.C. 3771A6, requires full and timely restitution, can't be put off. And the restitution statute, the procedure in 18 U.S.C. 3664, which we're talking about, refers to 18 U.S.C. 3572D2, both sides have mentioned that too. Well, D2 also says the judge shall order restitution in the shortest time possible. That doesn't allow for putting off restitution. The people who clearly were made homeless in this case were the victims because they lost their home and they lost their $74,000 of equity in it. And that's not millions of dollars which realistically could never be paid back. That's an amount that they could get paid back, although there hasn't been much progress on it because so far, the roughly $15,000 that's been paid back just barely covers the interest that's accruing. In fact, it doesn't cover the interest that's accruing by statute. And the judge did not waive the interest. They'd like to get their equity back so maybe they can buy a new house, but to just put it off leaves them with respect to a fraud that occurred in 2005. It leaves them in 2016 with nothing. And the reason we're here is because victims managed to get mandatory Victim Restitution Act, MVRA, which is 3664, the Crime Victims Rights Act, 18 U.S.C. 3771, and they want to support judges like the district court here that said, yes, there isn't going to be a delay. We're not putting it off. This is my order. The day you bring home a salary, a percentage of it goes to restitution. And okay, I've listened to you. I've listened to all your various other debts that you haven't paid. They don't detract because you haven't given me any indication you're paying them, but I'm still going to reduce from 10% to 8%. And the defendant has the right, actually he has the burden, if you look at 3664E, the defendant has the burden when restitution is at issue, not the victims, not the court, not the government, to argue that the restitution should be changed. So if the defendant wants to come in when a circumstance changes, that's fine, but putting it off, victims don't think that's an option. I'd be happy to answer any other questions the court would like. I don't believe we have any. Thank you. Thank you, Your Honor. Mr. Wolf, we'll have some rebuttal time. The Booth case isn't particularly helpful for resolving this matter because this court in Booth didn't articulate any of the factual circumstances upon which the lack of any abuse of discretion imposing $500 a month was concluded by the appellate judges, and I just looked and none of your honors were on that panel. So I think we all don't know what the facts were in Booth. But it's obvious that this abuse of discretion is the standard. We've said that. I think Mr. Stone's argument that there's no final judgment here which could be appealed, which he sort of impliedly made, that's wrong. There is a final judgment. It's in the excerpt of record at page 239, if I'm not mistaken, and that was the judgment in a criminal case on the revocation. I don't see why that's not appealable under Section 1291 of the U.S. Code, just like every other final judgment is. And the problem that Judge Mulway was trying to deal with was that the original judgment back in 2010 imposed the restitution payment schedule in a way that clearly was improper given this court's later decisions in the Gunning case, another case we've cited, because it told Mr. Noye he had to pay according to the collection policy of the United States Probation Office, and that's the very delegation that was the issue that this court said in Gunning, you can't delegate it. So Judge Mulway was trying to do the right thing in this revocation when it was brought to her attention that the earlier schedule wasn't legal anymore, and so she had to do something. I don't think Ms. Lee, who was the AUSA in this case, was confused. I think the government just changed their view of whether they want to support the district court or not. There is a different question, because at the district court, the issue for the government as for you is what do we think is the best outcome? And the issue here is given the range of discretion that the district court has, even if it wasn't the preferred outcome, was it an abuse of discretion? So the government's task is a different task. I agree that it's a different task, and actually the government and I agree on one thing, which is that the appeal waiver provision, the original plea agreement that applied to the sentence imposed in 2010, isn't resurrected to bar this appeal. But I think there's a difference between saying to the court, district court, well of course your honor has discretion, this would be our view, we agree with the defense counsel as to what the outcome should be, but of course it's in your discretion. It isn't exactly what they said. They said we object when Judge Mulway indicated what she was going to do, which is the same thing I said, but maybe it's neither here nor there, that particular point. The court has to get to the merits of this thing. I think that the district court's order in this case, on the factual record it had at that time in 2014, when these hearings took place, was itself abuse of discretion. It ought to be reversed on that basis. Thank you, Mr. Wolf. The case just argued is submitted and we appreciate the arguments of all three of you and thank you for your work as an amicus.
judges: Graber, Bybee, Christen